STATE OF MISSOURI *ex rel.* FRANCIS R. LONG, Relator, *v.*
ALONZO THOMPSON, Auditor of State, Respondent.

1. *Revenue—Union Military Fund.*—A collector who has overpaid the amount
   due the Union Military fund, cannot require the Auditor to issue a war-
   rant for his reimbursement payable out of any money in the State treas-
   ury. By law all warrants must be drawn payable out of a specific fund.—
   R. C. 1855, p. 1540 § 84.

*Petition for Mandamus.*

*J. H. Moss,* for relator.

I. The State Auditor is a ministerial officer, and has no
discretion in the performance of a ministerial duty fixed by
law. (13 Barb. 86; People ex rel. Stewart v. Newell.)

II. The Auditor is required to audit and adjust all claims
against the State, and when so audited and adjusted to draw
a proper warrant upon the Treasurer for the payment of the
same. (R. C. 1855, p. 1540, § 4.)

III. The amount allowed on the delinquent list to the

collectors of the State revenue in the several counties shall be allowed as credits to said collectors in the settlement of their accounts with the State Auditor, and when so allowed shall be paid out of the State treasury. (Acts Adj. Sess. 1863, p. 80, §§ 37–8, & p. 82, § 55 ; Acts 1863, p. 28, §§ 11 & 13.)

IV. The military tax levied in the several counties for the benefit of the Union military fund is but a part of the State revenue, the collection of which is secured by the same bond given for the collection of the general revenue, and is by law placed on the same footing and governed in all particulars by the same rules and regulations as prevail in the collection of the balance of the State revenue. (Acts 1863, p. 28, §§ 11 & 13.)

V. The law provides that the amounts allowed to the collectors of the State revenue in the several counties, upon their delinquent list, shall be paid out of "the State treasury." Such is the broad language of the law without restriction or limitation, and hence the warrant in this case should have been drawn payable out of any money in the State treasury. (Acts Adj. Sess. 1863, p. 82, § 55.)

*Krum & Decker,* for respondent.

The Auditor is vested with a *quasi* judicial power in determining whether a debt exists against the State, and is vested by law with the duty to audit, settle, and adjust all claims, and the court ought not to interfere with such auditing, adjusting, and settling. This is not a case where the Auditor refuses to act, but he is simply charged with an error of judgment. (7 Mo. 354 ; 21 Mo. 552–3.)

WAGNER, Judge, delivered the opinion of the court.

This is a petition for a *mandamus* filed by the relator against the State Auditor, asking that the latter may be compelled to draw a warrant in his favor on the Treasurer of the State for the sum of $4,669.69 out of any money in the State treasury.

There is some difference in regard to the facts as stated in the relator's petition and the return made to the writ by the respondent, but as the question comes up on a demurrer to the return, the matters and things stated therein will be taken to be true. From this it appears that the relator was collector of the revenue for Clay county for the year 1864, and as such collector stood charged upon the revenue books of the State with the sum of $10,617.04 of the revenue tax, due to the Revenue fund ; that he had made payment into the Revenue fund for taxes of the year 1863, under § 562, R. C. 1855, p. 1347. When making final settlement for the taxes of 1864, he was entitled to receive the credits provided for in § 57, R. C. 1855, p. 1348.

The respondent on these certificates audited, settled, and adjusted his account (R. C. 1855, p. 1542, § 1) in connection with the relief act of 1865, (Laws of Mo. 1865, p. 111,) and found the sum of $467.28 to be due to the relator for taxes which had been overpaid by him into the Revenue fund. Thereupon he drew his warrant in his favor for the said sum of $467.28 upon the Revenue fund, which warrant was paid by the State Treasurer.

It appears that the relator also stood charged on the Auditor's books with the sum of $25,169.95 of commutation tax and military tax due to the Union military fund for the year 1864, which was payable into said Union military fund, (Sess. Acts 1863, p. 28, §§ 10, 11, 12,) an entirely separate and distinct fund. He had theretofore made payments into the Union military fund for the year 1863, in excess of dues in the sum of $1,622.39, and on the 26th of December, 1864, for the military and commutation tax of 1864, he paid the sum of $11,034.13 into the same fund. In a settlement with respondent as Auditor, it was ascertained after giving him credit for all proper and legal deductions, that he had overpaid the amount due from him on account of the commutation and military tax in the sum of $4,669.69, and that this excess or overpayment had been paid by him into the Union military fund. For this excess of $4,669.69 the respondent

drew his warrant in favor of the relator on the Union military fund; the Treasurer refused to pay said warrant, and made the following endorsement thereon:

"Payment of the within declined for the reason that the fund out of which it is required that the same should be paid is appropriated and set apart for the sole and only purpose of redeeming Union military bonds until they are all redeemed. See State ex rel. Long v. Bishop.      WM. BISHOP,

*Treasurer.*"

In the case of the State ex rel. Long v. Bishop, this court decided that the Union military fund could not be diverted from the object for which it was created and applied to other purposes; and that the Legislature in the creation of the fund had provided the means for its assessment and collection, and that payment therefor should be made out of another and different fund. But that has no particular bearing on the question here involved. By law every warrant must be drawn on a specific fund, (2 R. C. 1855, p. 1540, §·4,) and accordingly the warrant for $467.28 was drawn on the Revenue fund because a general appropriation exists to refund in case of excess of payment as provided in section 57. (2 R. C. p. 1348.) But this only applies to the general revenue, and it was surely never intended that where money is deposited to the credit of the Union military fund by mistake or in excess of what is legally due, that it should be retained and appropriated to that fund, and that the general revenue should be required to bear the burden and remunerate the person legally entitled to repayment. The Legislature has not designated or appropriated any fund to meet such an exigency, and the Auditor was not authorized to draw a warrant in accordance with the demand of the relator.

The *mandamus* is refused. Judge Holmes concurs; Judge Lovelace absent.